**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

UNITED STATES OF AMERICA,

                                                    Criminal No. 24-204(2) (JRT/LIB)
                           Plaintiff,

v.

                                                    **MEMORANDUM OPINION AND ORDER**
ROBYN LEA LUSSIER,                                  **ADOPTING REPORT AND**
                                                    **RECOMMENDATIONS**

                           Defendant.

Lauren Olivia Roso, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Plaintiff.

R J Zayed, **DORSEY & WHITNEY LLP**, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402, for Defendant.

Based largely on the evidence obtained from searching their vehicle in a traffic stop, Defendants Derek Paddy and Robyn Lussier were charged with conspiracy to distribute fentanyl and possession with intent to distribute fentanyl. In search of Paddy, law enforcement pulled over an SUV carrying Paddy, Lussier, and other passengers. Officers arrested Paddy, searched the vehicle, and discovered evidence of narcotics in the vehicle and in Lussier's wallet. Lussier challenged the constitutionality of these various searches in a motion to suppress, but Magistrate Judge Leo I. Brisbois issued a report and recommendation ("R&R") recommending the Court deny Lussier's motion to suppress. Because the Court finds law enforcement acted within the bounds of the Constitution for

each stage of their search, it will overrule Lussier's objections, adopt the Magistrate Judge's R&R, and deny the motion to suppress.

## BACKGROUND

### I.    FACTS

To understand the factual background of law enforcement's search of Lussier and her belongings, the Court must first provide contextual background on co-defendant Paddy.  On May 10, 2017, the Red Lake Indian Reservation issued a removal order to Derek Paddy for distributing narcotics on the reservation.  (Mot. Hr'g Tr. at 9:16–10:19, Nov. 5, 2024, Docket No. 51.)  The removal order prohibited Paddy from entering the reservation and threatened his arrest for trespass.  (*Id.* at 10:2–7.)  Paddy also had an active Department of Corrections felony warrant authorizing his arrest.  (*Id.* at 9:19–23.)

In October 2023, Criminal Investigator Daniel Lasley ("CI Lasley") received information that Paddy was on the reservation distributing narcotics and traveling in a tan SUV with a specific license plate number.  (*Id.* at 11:2–13.)

On November 2, 2023, CI Lasley observed a vehicle that matched the tan SUV description leaving a known narcotic distribution residence.  (*Id.* at 12:4–13:8.)  CI Lasley recognized the license plate number as the one associated with the vehicle Paddy was suspected of traveling in and began following the vehicle.  (*Id.* at 13:12–14:17.)  While following the vehicle, CI Lasley observed an individual he thought to be Paddy in the front passenger seat.  (*Id.* at 13:24–14:2.)  CI Lasley described that the individual turned their face away in an "evasive" manner upon seeing CI Lasley.  (*Id.* at 12:8–14, 14:3–6.)  After

waiting for backup units to arrive, CI Lasley then activated his emergency lights and conducted a traffic stop of the vehicle. (*Id.* at 14:9–22.)

As he approached the vehicle, CI Lasley recognized the front passenger to be Stanley Donnell, not Paddy. (*Id.* at 15:15–16:1.) CI Lasley told the driver why he initiated the stop, asked him to exit the vehicle, and detained him. (*Id.* at 16:20–24.) Both the driver and Donnell were detained at the front of the vehicle. (*Id.* at 19:18–21.)

Another investigator, Criminal Investigator Ronald Leyba ("CI Leyba") noticed Paddy crouching in the back of the car. (*Id.* at 16:25–17:2, 47:13–24.) CI Leyba removed Paddy from the vehicle, handcuffed him, and conducted a pat down. (*Id.* at 16:25–17:2, 48:4-8.) CI Leyba found two cellophane bags on Paddy that later tested positive for fentanyl. (*Id.* at 48:10–14.)

Officer Winter Kingbird ("Officer Kingbird") arrived and was instructed to investigate the rear passenger side of the vehicle. (*Id.* at 92:14–20.) He asked the female passenger, later identified as Defendant Robyn Lussier, to open the door. (*Id.* at 92:21–93:16.) Lussier had been sitting next to Paddy in the back seat of the vehicle. (*Id.* at 20:17–19.) As soon as the door opened, Officer Kingbird observed pink micro baggies on the floor of the vehicle next to Lussier's feet. (*Id.* at 92:23–94:24.) Based on his training and experience, Officer Kingbird opined that typically small bags of that type are used for drug distribution. (*Id.* at 93:20–94:1.)

Officer Kingbird then asked Lussier to exit the vehicle and show him identification. (*Id.* at 95:2–3.)  Lussier reached back into the vehicle to grab her purse, but Officer Kingbird told her to stop and instead retrieved the purse for her to ensure she did not access a weapon.  (*Id.* at 95:3–7, 21–25.)  Lussier eventually fished her wallet out of the purse, but the length of time she spent "rustling around" in her purse concerned Officer Kingbird.  (*Id.* at 95:7–9,96:3–16.)  Once Lussier had her wallet, Officer Kingbird placed the purse back inside the vehicle.  (*Id.* at 107:22–108:1.)  Lussier then gave her ID to Officer Kingbird, who verified her information and concluded there were no existing warrants out for her arrest.  (*Id.* at 108:2–13.)

Other officers on the scene, however, had already discovered evidence of drugs in the vehicle, including packaging materials, scales, glass smoking devices, and a lockbox containing blue pills officers suspected were fentanyl.  (*Id.* at 50:6–9, 96:23–97:24, 109:16–19, 113:7–9.)  As a result, all occupants of the vehicle, including Lussier, were ordered detained.  (*Id.* at 97:25–98:5.)

Officer Kingbird handcuffed Lussier and took the wallet from her hands.  (*Id.* at 98:7–13.)  He searched the wallet and found a large amount of cash and a baggie containing a powdery white substance.  (*Id.* at 99:2–6.)  CI Leyba informed Lussier of her rights, and she was brought to the Red Lake Detention Center.  (*Id.* at 52:11–14, 99:20–25.)  Lussier was searched at the detention center, where officers discovered an additional plastic baggie and large amount of cash on her person.  (*Id.* at 54:2–11.)

## II.    PROCEDURAL HISTORY

A federal grand jury indicted Lussier and Paddy on two charges: conspiracy to distribute fentanyl in violation of 21 U.S.C §§ 841(a)(1) and 846 and possession with intent to distribute fentanyl in violation of 21 U.S.C § 841(a)(1) and 841(b)(1)(C).  (Indictment, July 30, 2024, Docket No. 1).  Lussier pleaded not guilty to both counts.  (Arraignment Min. Entry, Aug. 7, 2024, Docket No. 22.)  Lussier filed a motion to suppress the evidence obtained from the seizure Lussier's person, property, and possessions on the date of her arrest.  (Mot. Suppress, Aug. 28, 2024, Docket No. 33.)  The Magistrate Judge conducted a hearing on the motion and subsequently issued an R&R that recommended the Court deny the motion to suppress.[1]  (Min. Entry, Oct. 18, 2024, Docket No. 48; R. & R., Jan. 15, 2025, Docket No. 65.)

Lussier timely objected.  (Obj. to R. & R., Jan. 29, 2025, Docket No. 66.)

### DISCUSSION

## I.    STANDARD OF REVIEW

After an R&R is filed by a magistrate judge, "a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Crim. P. 59(b)(2).  For a motion to suppress evidence, "[t]he district judge must consider de novo any objection to the magistrate judge's recommendation." Fed. R. Crim. P. 59(b)(1), (3);

---

[1] In conjunction with the R&R, the Magistrate Judge resolved four non-dispositive evidentiary motions.  (Order, Jan. 15, 2025, Docket No. 64.)  Because Lussier does not appeal those decisions, the Magistrate Judge's order is not addressed here.

*see also* 28 U.S.C. § 636(b)(1).   "The objections should specify the portions of the

magistrate judge's [R&R] to which objections are made and provide a basis for those

objections."  *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn. Sept.

28, 2008).

## II.    ANALYSIS

Lussier raises objections to nearly every stage of the traffic stop that ultimately led

to the search of her wallet.  She objects (1) to the length of the traffic stop, (2) to the

finding of probable cause to search the vehicle, (3) to the extension of that vehicle search

to Lussier as a passenger, and (4) to the extension of that search to her wallet.  The Court

reviews each de novo.

### A.    Length of the *Terry* Stop

Lussier concedes the initial stop of the SUV was lawful.  Instead, she argues the

stop was unreasonably prolonged and should have ended immediately upon arrest of

Paddy.

But officers were within their rights to continue the *Terry*[2] stop even after Paddy's

arrest[3] because law enforcement may extend traffic stops in the name of safety.  In

general, the permissible length of a traffic stop "is determined by the seizure's 'mission'—

---

[2] *Terry v. Ohio*, 392 U.S. 1 (1968).
[3] Parties dispute whether Paddy's arrest had been completed by the time law enforcement ordered the other parties out of the car and detained.  But that fact is irrelevant. Even if Paddy's arrest had been fully completed, the safety concerns persisted throughout, and law enforcement were within their rights to continue their search.

to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (citations omitted). But "the possible sources of harm" to police officers increase when there are multiple occupants in a vehicle. *United States v. Sanders*, 510 F.3d 788, 7890 (8th Cir. 2007). Specifically, "both the driver and passenger may be ordered to exit the vehicle in the interests of officer safety." *United States v. Oliver*, 550 F.3d 734, 737 (8th Cir. 2008). "After securing a suspect, officers may also conduct a protective sweep of the vehicle's passenger compartment to search for dangerous weapons that the suspect or other occupants might later access" if "the officer had an objectively reasonable concern for officer safety or suspicion of danger." *United States v. Smith*, 645 F.3d 998, 1002–03 (8th Cir. 2011).

Here, though Paddy's arrest served as the initial reason for the stop, officers were within their rights to extend the stop out of legitimate concerns for their safety. The vehicle contained four occupants, and at least one occupant, Paddy, had a known history of violence and weapon use. CI Lansley suspected a firearm could be in the vehicle due to Paddy's imprisonment "for home invasion involving a firearm and suspected to be involved in multiple shooting incidents." (Mot. Hr'g Tr. at 18:21–19:5.) Acting on that concern, CI Lansley ordered everyone to exit the vehicle, and law enforcement continued the search with a protective sweep. The Constitution allowed them to do so.

Accordingly, the Court will overrule Lussier's objection as to the prolonged traffic stop.

### B.    Search of Containers in Automobile

Lussier argues the searches of the SUV and Lussier's property were not supported by probable cause under the automobile exception.  Specifically, she states that observing empty and unused baggies, even paired with an officer's training and experience, is not enough to establish probable cause.

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."  *Katz v. United States,* 389 U.S. 347, 357 (1967).  "[T]he 'automobile exception' permits the warrantless search of a vehicle if the police 'had probable cause to believe the vehicle contained contraband or other evidence of a crime before the search began.'"  *United States v. Vore*, 743 F.3d 1175, 1179 (8th Cir. 2014) (quoting *United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003)).  Probable cause may be established if law enforcement observes contraband in plain view.  *See, e.g., United States v. Smith*, 990 F.3d 607, 612 (8th Cir. 2021).  Further, observing containers that are known distribution methods for illegal substances is sufficient to establish probable cause and search a vehicle without a warrant.  *United States v. West*, 280 F. App'x 563, 566 (8th Cir. 2008).

Here, Officer Kingbird testified that when he opened the van door, he "right away" saw pink micro baggies on the floorboards of the vehicle.  (Mot. Hr'g Tr. at 92:23–93:1).

Micro baggies are known to contain drugs, and other courts agree that they can constitute drug paraphernalia of an incriminating nature. *See, e.g.*, *United States v. Williams*, No. 4:15-365, 2016 WL 3166846, at *8 (E.D. Mo. May 16, 2016), *report and recommendation adopted*, 2016 WL 3141338 (E.D. Mo. June 6, 2016), *aff'd*, 951 F.3d 892 (8th Cir. 2020). Furthermore, law enforcement did not observe this evidence in a vacuum: the vehicle in question was connected to a person who had been ordered removed from the reservation due to distribution of narcotics,[4] it had just left a residence that law enforcement knew to be involved in narcotics distribution, and law enforcement had already discovered narcotics on Paddy. (Mot. Hr'g Tr. 11:10–13, 12:19–13:8, 48:2–14.) In the aggregate, the evidence in plain view, coupled with law enforcement's ample reasons to suspect this particular vehicle was involved in narcotics distribution, gave officers probable cause to believe that evidence of a crime or contraband would be found in a search of the vehicle. The search of the car was constitutionally permissible, as was a search of any containers that could contain narcotics. *Wyoming v. Houghton*, 526 U.S. 295, 302 (1999) (allowing search of a passenger's belongings if an officer has probable cause to search for contraband in the car generally).

---

[4] One of Lussier's objections to the R&R is that its probable cause determination relied on the unsubstantiated and unreliable "tip" that Paddy was using the SUV to distribute narcotics on the reservation. But that tip was but one straw in a bale of hay more than weighty enough to support probable cause.

Accordingly, the Court will overrule Lussier's objection as to the automobile exception.

### C.    Extension of Search to Lussier as a Passenger

Lussier next argues that her mere presence next to Paddy did not establish probable cause to search her belongings. She principally relies *United States v. Di Re*, 332 U.S. 581, 587 (1948) to argue that a person with a "mere presence in a suspected car" is not subject to warrantless searches. In *Di Re*, police pulled over a driver suspected of possessing counterfeit gas coupons but then proceeded to search a passenger of that car, finding additional coupons in that passenger's pockets. *Id.* at 583. But the Supreme Court held that a passenger's mere presence in a vehicle suspected of containing contraband does not justify a search of that passenger's person without a warrant. *Id.* at 587.

But Lussier's situation is different for at least two reasons.

First, as the R&R rightly noted, Fourth Amendment caselaw has evolved significantly since 1948. Specifically, in *Houghton*, the Supreme Court clarified that when considering the constitutionality of warrantless searches of a vehicle's passengers, "the degree of intrusiveness" differs between a body search and a search of personal belongings. 526 U.S. at 303. Whereas a body search like that in *Di Re* involves "traumatic consequences," a "passenger's privacy expectations" in their personal belongings are "considerably diminished." *Id.* at 303–04. These privacy interests must be balanced against the interests of the government, and "law enforcement would be appreciably impaired without the ability to search a passenger's personal belongings when there is

-10-

reason to believe contraband or evidence of criminal wrongdoing is hidden in the car."

*Id.* at 304.  Because law enforcement searched her belongings and not her person, Lussier

does not benefit from *Di Re*'s heightened protections as a mere passenger.

Second, Lussier was more than a mere passenger.  By the time Officer Kingbird

searched Lussier's wallet, law enforcement had located an SUV associated with a known

narcotics dealer, tracked it from a residence known for narcotics crimes, discovered the

dealer in the SUV, found narcotics on his person, seen some baggies in plain view,

discovered even more narcotics evidence near Lussier in a sweep of the car, and observed

Lussier taking a suspiciously long time to retrieve her wallet from her bag.  Lussier was no

mere passenger here.  Law enforcement had individualized probable cause to believe she

might have evidence of narcotics stored in her wallet.

Accordingly, the Court will overrule Lussier's "mere proximity" objection, as well.

### D.    Extension of Search to Lussier's Wallet as a Container

Finally, Lussier argues that because her purse was taken outside the vehicle, it falls

outside the automobile expectation.  That is, she argues Officer Kingbird's intervening

actions changed the status of her purse from a "container within the vehicle" to an

"extension of her person," entitling her to enhanced protection under the Fourth

Amendment.

In general, "closed containers in cars [can] be searched without a warrant because

of their presence within the automobile."  *California v. Acevedo*, 500 U.S. 565, 572 (1991).

The lawful search of containers within a car includes searching "a passenger's personal

belongings." *United States v. Murillo-Salgado*, 854 F.3d 407, 418 (8th Cir. 2017) (citing

*Houghton*, 526 U.S. at 302). However, Fourth Amendment caselaw has left unanswered

the question of what might occur if a person wearing a purse exits a vehicle before police

established probable cause to search the vehicle. *Houghton*, 526 U.S. at 308 (Breyer, J.,

concurring) (noting that "it would matter [to him] if a woman's purse . . . were attached

to her person," as "[i]t might then amount to a kind of outer clothing" (citations omitted)).

But the Court need not answer that thorny question here, as Lussier was not

wearing her purse when probable cause to search the vehicle was established under the

automobile exception. Only after that establishment did Office Kingbird take the purse

out of the vehicle so that Lussier could provide identification. *Cf. id.* ("In this case, the

purse was separate from the person, and no one has claimed that, under those

circumstances, the type of container makes a difference.") Therefore, law enforcement

could properly search the purse under the vehicle exception. *See also United States v.*

*Johnson*, No. 23-65, 2023 WL 8358611, at *14, n.23 (D. Minn. Oct. 5, 2023), *report and*

*recommendation adopted*, 2023 WL 8355945 (D. Minn. Nov. 30, 2023) (allowing search

of infant formula removed from vehicle after probable cause established for vehicle);

*United States v. Davis*, 576 F. App'x 292, 294–95 (4th Cir. 2014) (allowing search of bag

removed from car during traffic stop under vehicle exception).

Accordingly, the Court will overrule Lussier's objection as to the extension of the

search to Lussier's purse.

Because the Court finds there was probable cause to search Lussier's wallet, it will also deny the motion to suppress any further fruit of the poisonous tree stemming from that search.

## CONCLUSION

The Magistrate Judge recommended denying Lussier's motion to suppress because law enforcement lawfully extended their traffic stop and had probable cause to search the vehicle and its containers, including Lussier's possessions.  The Court agrees and will overrule Lussier's objections, adopt the R&R, and deny the motion to suppress.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that

1. Defendant Lussier's Objection to the Report and Recommendation [Docket No. 66] is **OVERRULED**;

2. The Magistrate Judge's Report and Recommendation [Docket No. 65] is **ADOPTED**; and

3. Defendant Lussier's Motion to Suppress [Docket No. 33] is **DENIED**.

DATED:  March 26, 2025
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge